UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CENTER FOR ARMS CONTROL AND NON-PROLIFERATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-682 (RMC) |
| REDD *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff, the Center for Arms Control and Non-Proliferation, alleges that the Commission on the Intelligence Capabilities of the United States Regarding Weapons of Mass Destruction ("Commission") and the Commission's former Executive Director, Vice Admiral (Ret.) John Scott Redd, violated the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. §2 (1972), by declining to make publicly available certain Commission records. Plaintiff seeks a writ of mandamus ordering the Commission to publicly release all of its unclassified documents covered by FACA, as well as a declaration that the Commission is in violation of FACA.

Because the Commission went out of existence on May 27, 2005, and its Executive Director tendered his resignation on the same day after transferring all Commission documents to the custody of the National Security Council ("NSC") organization, Defendants move to dismiss on the basis that Plaintiff's claims are moot and nonjusticiable. Plaintiff argues that its suit is not moot because the documents still exist and Executive Director Redd is still a federal employee. Plaintiff also seeks a declaration that the Commission was subject to FACA during its existence.

The termination of the Commission renders it not subject to suit and the allegations against it must therefore be dismissed. Because the Commission's former Executive Director no longer holds that position and no longer has authority or control over Commission documents, all allegations against him must also be dismissed. Without a live controversy, the Court declines to determine whether the Commission was subject to FACA during its existence. Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure will be granted and the claims against them will be dismissed.[1]

## I. BACKGROUND

By Executive Order 13328, issued on February 4, 2004, President George W. Bush established the Commission on the Intelligence Capabilities of the United States Regarding Weapons of Mass Destruction ("Commission"). *See* Exec. Order No. 13328.[2] The Commission was established for the purpose of "advising the President in the discharge of his constitutional authority under Article II of the Constitution to conduct foreign relations, protect national security, and command the Armed Forces of the United States." *Id.* § 2. The Commission was charged with two

---

[1] On December 5, 2005, Plaintiff filed an amended complaint pursuant to Federal Rule of Civil Procedure 15(a). Plaintiff has added Stephen Hadley, the National Security Advisor to President George W. Bush, as a party to this lawsuit. Plaintiff states that he has added Mr. Hadley based on representations made by Defendants that "all documents sought by plaintiff[] . . . currently reside with the National Security Council which is under the control of the defendant Stephen Hadley." First Amend. Compl. ¶ 8. This opinion will not address the claims against Mr. Hadley and will limit its analysis to the allegations against the Commission and Vice Admiral (Ret.) Redd.

[2] The underlying facts are not in dispute and are taken from the Government's Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mem.").

main tasks: (1) examining the Intelligence Community's[3] prior assessments of weapons of mass destruction ("WMD") programs in Iraq, Libya, and Afghanistan; and (2) examining the Intelligence Community's current capabilities to confront the challenges posed by WMD and "related threats of the 21st Century." *Id.* The President required the Commission to submit a report of its findings, and specific recommendations for improving the Intelligence Community's abilities to confront WMD and related challenges, by March 31, 2005. *Id.* § 2(d). The President also directed that the "Central Intelligence Agency and other components of the Intelligence Community shall utilize the Commission and its resulting report." *Id.* Executive Order 13328 expressly ordered the Commission to terminate "within 60 days after submitting its report." *Id.* § 8.

The President appointed Charles S. Robb, former Governor of Virginia and United States Senator, and Senior Judge Laurence H. Silberman of the United States Court of Appeals for

---

[3] Pursuant to the National Security Act of 1947, 50 U.S.C. § 401a(4), "[t]he term 'intelligence community' includes the following":

**(A)** The Office of the Director of National Intelligence.
**(B)** The Central Intelligence Agency.
**(C)** The National Security Agency.
**(D)** The Defense Intelligence Agency.
**(E)** The National Geospatial-Intelligence Agency.
**(F)** The National Reconnaissance Office.
**(G)** Other offices within the Department of Defense for the collection of specialized national intelligence through reconnaissance programs.
**(H)** The intelligence elements of the Army, the Navy, the Air Force, the Marine Corps, the Federal Bureau of Investigation, and the Department of Energy.
**(I)** The Bureau of Intelligence and Research of the Department of State.
**(J)** The Office of Intelligence and Analysis of the Department of the Treasury.
**(K)** The elements of the Department of Homeland Security concerned with the analysis of intelligence information, including the Office of Intelligence of the Coast Guard.
**(L)** Such other elements of any other department or agency as may be designated by the President, or designated jointly by the Director of National Intelligence and the head of the department or agency concerned, as an element of the intelligence community.

the District of Columbia Circuit, as co-chairs of the Commission. Seven other Commissioners came from similar points on the political spectrum: Lloyd Cutler, founding partner of Wilmer Cutler Pickering LLP and counsel to Presidents Clinton and Carter; Dr. Richard C. Levin, President of Yale University; United States Senator John McCain; Henry S. Rowen, Senior Fellow at the Hoover Institution; Admiral (Ret.) William O. Studeman, former Director of the National Security Agency and Deputy Director of the CIA; Dr. Charles M. Vest, former President of the Massachusetts Institute of Technology; and Judge Patricia Wald, former Chief Judge on the United States Court of Appeals for the D.C. Circuit and Judge on the International Criminal Tribunal for the Former Yugoslavia at the Hague, Netherlands. When Mr. Cutler resigned for health reasons, Walter B. Slocombe was appointed to replace him. Vice Admiral (Ret.) Redd was selected as the Executive Director over a staff of more than 60 members.

The Commission conducted a year of study that included review of thousands of documents and interviews of hundreds of knowledgeable persons. The Commission held 13 meetings, most of which spanned multiple days. The Commission gave public notice of its meetings in the Federal Register, released information about its meetings on its web site, and issued press statements. It also maintained a public reading room which included unclassified meeting summaries and agendas. Defs.' Mem. at 13-15.

On March 31, 2005, the Commission presented a 692-page classified report to the President and released a 601-page unclassified version of the report to the public. Thereafter, as required by section 8 of Executive Order 13328, the Commission ceased to function on May 27, 2005. Effective on that date, all remaining personnel, including the Executive Director, tendered resignations. In addition, the Commission transferred all records in its possession or control to the

NSC on that date. *Id*. at 6-7.

## II.  STATUTORY PROVISIONS

The Federal Advisory Committee Act ("FACA") was "born of a desire to assess the need for the 'numerous committees, boards, commissions, councils, and similar groups'" that advised different portions of the Executive Branch and that cost large sums of money. *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 446 (1989).

> Its purpose was to ensure that new advisory committees be established only when essential and that their number be minimized; that they be terminated when they have outlived their usefulness; that their creation, operation, and duration be subject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities and cost; and that their work be exclusively advisory in nature.

*Id.* For these purposes, advisory committees subject to FACA must file a charter, keep detailed minutes of their meetings, provide advance notice of their meetings, open meetings to the public absent a determination that the meeting may be closed in accordance with the Government in the Sunshine Act, make publicly available their records and other documents, be fairly balanced in membership, operate within regulatory guidelines promulgated by the General Services Administration ("GSA"), and terminate no later than two years after establishment unless specifically authorized to continue. 5 U.S.C. app. §§ 9(c), 10(a)-(c), 5(b)(2), 7 and 14(a). Certain committees are expressly exempt from FACA's requirements, including committees established or utilized by the CIA, *id.* § 4(b)(1), and committees composed wholly of officers or employees of the federal Government. *Id.* § 3(2)(C).

The members of the Commission included federal employees and non-employees.

### III.  LEGAL STANDARDS

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The threshold determination in resolving a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support his or her claims.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1984), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction.  *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp.2d 15, 19 (D.D.C. 1998).  In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case."  *Alliance For Democracy v. Federal Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 30-31 (D.D.C. 2001). The Court may dismiss a complaint for lack of subject-matter jurisdiction only if  "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## IV.  DISCUSSION

Defendants can no longer provide any relief to Plaintiff.  Accordingly, Plaintiff's claims against them must be dismissed for lack of subject matter jurisdiction.

Article III of the Constitution limits the jurisdiction of federal courts to the resolution of "actual, ongoing controversies."  *21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)).  Federal courts are without authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of California v. United States*, 502 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  It is not enough that a complaint could be redressed at the time it was filed; "throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).  If events occur during the course of a lawsuit that make it impossible for a federal court to grant "meaningful relief," the case must be dismissed as moot.  *McBryde v. Comm. to Review*, 264 F.3d 52, 55 (D.C. Cir. 2001).

That is exactly what has happened in the case at bar.  Plaintiff filed its complaint on April 6, 2005, after the Commission had submitted the public and classified versions of its report to the President.  The complaint was filed and served at a time when the Commission still existed and Vice Admiral (Ret.) Redd was still its Executive Director.  Plaintiff seeks a declaration that the Commission "is" in violation of FACA and an order requiring it to release

non-classified documents pursuant to FACA.  Although the complaint was identified as seeking a "TRO/Preliminary Injunction," Plaintiff declined to proceed expeditiously.

The Commission went out of existence on May 27, 2005, and on that date, its Executive Director transferred custody and control of all Commission documents to NSC and tendered his resignation.  Thus, the Commission no longer exists and cannot be sued for any kind of relief.  *See Cheney v. United States District Court*, 542 U.S. 367, 375 (2004) (noting that the district court dismissed FACA-related claims against the National Energy Policy Development Group because it "had been dissolved" and "could not be sued as a defendant").  Its Executive Director – the only other named defendant – no longer controls the documents and cannot effect any remedy even should the Court rule on the merits in Plaintiff's favor.  Under such circumstances, there is no likelihood that the Plaintiff's alleged injury can be redressed by a judicial decision against these defendants and the claims against them must therefore be dismissed.  *See McBryde*, 264 F.3d at 55 ("If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot") (citing *Church of Scientology*, 506 U.S. at 12); *see also Miccosukee Tribe of Indians v. Southern Everglade Restoration Alliance*, 304 F.3d 1076, 1081 (11th Cir. 2005) (affirming on mootness grounds dismissal of a FACA claim against an advisory committee and its former executive director because the committee no longer existed and therefore "no meaningful relief" was available to the plaintiff as to those defendants).

Plaintiff seeks to avoid this result by citing cases in which orders to release records were granted for FACA violations despite the dissolution of the relevant advisory committee.  *See e.g., Cummock v. Gore*, 180 F.3d 282, 284 (D.C. Cir. 1999) (suit against former

Vice President Gore, who chaired the aviation safety commission at issue); *Ass'n of Am. Physicians and Surgeons, Inc. v. Clinton*, 997 F.2d 898, 900-01 (D.C. Cir. 1993) (suit against former First Lady Hillary Rodham Clinton and other Executive Branch members of the President's Task Force on National Health Care Reform); *Food Chem. News v. Dep't of Health and Human Servs.*, 980 F.2d 1468, 1468 (D.C. Cir. 1992) (suit against the Department of Health and Human Services); *Natural Res. Def. Council v. Abraham*, 223 F. Supp. 2d 162, 166 (D.D.C. 2002) (suit against Department of Energy and Secretary of Energy).  These cases do not help Plaintiff's cause.  In each instance, the defendant was a Government agency or official who retained control of the relevant records or had the same official capacity in which they served on the committee and could, presumably, still effect an ordered disclosure.

That is not the case here.  The Commission no longer exists and Vice Admiral (Ret.) Redd does not control the documents.  Plaintiff argues that Vice Admiral (Ret.) Redd remains a federal employee and can be ordered to release non-classified Commission records.  However, as the Plaintiff acknowledges, Vice Admiral (Ret.) Redd is currently the Director of the National Counterterrorism Center, a position for which he was confirmed on July 28, 2005, and sworn in on August 1, 2005.  *See* Reply in Support of Defendants' Motion to Dismiss, Ex. A (Declaration of Vice Admiral (Ret.) John Scott Redd).  This appointment to a different federal position, with duties and authorities entirely separate from those of the Commission's Executive Director, does not restore custody or control over Commission records to Vice Admiral (Ret.) Redd, which was relinquished to the NSC on May 27, 2005.

Whether or not the records can be obtained from their true custodian, it is clear that the Court cannot order Vice Admiral (Ret.) Redd to release them.  Thus, Plaintiff's

allegations of FACA violations cannot be remedied by way of a lawsuit naming the Commission and Vice Admiral (Ret.) Redd as defendants. The claims against these defendants are mooted by events since the complaint was filed. *See McBryde,* 264 F.3d at 55.

While Plaintiff also seeks a declaration that the Commission violated FACA during its existence, the Court is without jurisdiction to make that determination. Given the Commission's demise, such a decision would be advisory only and would not resolve a live controversy. "Under Article III of the Constitution, this Court may only adjudicate actual, ongoing controversies." *Honig*, 484 U.S. at 317 (citations omitted).

## V.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of subject matter jurisdiction will be granted. The claims against these defendants are moot. A separate order accompanies this memorandum opinion.

                                                         _____/s/_____
                                                         ROSEMARY M. COLLYER
                                                         United States District Judge

Dated: December 15, 2005.